### JAMES RIDDLE *versus* BENJAMIN F. VARNUM.

Where some act remains to be done in relation to the articles which are the subject
of a sale, as that of weighing or measuring, and there is no evidence tending to
show the intention of the parties to make an absolute and complete sale, the prop-
erty in such articles does not pass to the vendee, until such act is performed. But
it is otherwise, if the payment of the purchase money is not a condition precedent
to the transfer, and it appears that the parties intended that the sale should be
complete before the articles were weighed or measured.

R. who was the owner of a quantity of timber, lying in a mill pond at the termina
tion of a canal, under the charge of the superintendent of the canal, entered into a
contract with C. for the sale thereof, in pursuance of which C. signed the follow-
ing writing : " Received of R. four shots of white oak plank, &c. for which I
promise to pay him twenty-six dollars per thousand, board measure. The above
timber delivered in the mill pond," &c. ; and R., at the same time, executed a
writing in the following words : " Received of C. two hundred dollars in part pay
for " the timber in question. " Remainder to be paid in ninety days from survey-
ing. The canallage to be paid by C., when he takes the plank and timber from
the pond." R. further agreed, that C. might procure the timber to be measured
by the superintendent of the canal, and that he would abide by the measurement.
Before the timber was measured, C. became insolvent, and it was attached by one
of his creditors. It was *held*, that if there was a delivery to C., and if it was the
intention of the parties to make the sale complete before the measure of the tim-
ber was ascertained, the property was vested in C. at the time of the attachment.

TROVER for a quantity of timber attached in January 1835,
by a deputy of the defendant, who was sheriff of the county
of Middlesex, upon a writ issued in favor of one Trowbridge
against Curtis & Barstow.

The trial was before *Wilde* J.

The plaintiff proved, that in the autumn or winter of 1834,
he was the owner of the timber, and sent the same by the
Middlesex Canal from New Hampshire to Charlestown ; and
that it was left in the pond at the termination of the canal in
Charlestown, in the charge of one Greenleaf, the superinten-
dent of the canal in that town, where it remained at the time
of the attachment.

The defendant introduced Curtis as a witness, who testified,
that the plaintiff, a short time previously to December 17,
1834, and while the timber was lying in the pond frozen up,
came to Boston, and proposed to sell it to the witness ; that
the plaintiff and the witness went to Charlestown, and exam-
ined it ; that upon their return to Boston, an agreement was
made for the purchase thereof ; that the witness, on Decem-

ber 17, 1834, paid the plaintiff the sum of $200, and thereupon the two following instruments were executed by the parties respectively, and interchanged.        .

"Received of James Riddle four shots of white oak plank, for which I promise to pay him twenty-six dollars per thousand board measure. Also one shot of black oak plank," &c "The above timber delivered in the mill pond at Charlestown locks, and plank. Boston, December 17, 1834. Curtis & Barstow."

"Received of Curtis & Barstow two hundred dollars in part pay for five shots of oak plank, &c. in the mill pond at Charlestown, as follows, white oak plank, twenty-six dollars a thousand, board measure," &c. "Remainder to be paid in ninety days from surveying. The canallage to be paid by Curtis & Barstow, when they take the plank, &c. from the pond. The amount for canallage to be deducted from the residue of money due for the above plank, &c. when settled for. Boston, December 17, 1834. James Riddle"

Curtis also testified, that previously to their separation, the plaintiff agreed, that the witness might procure the timber to be measured by Greenleaf, and that he, the plaintiff, would abide by such admeasurement.

The defendant called one Josselyn, as a witness, who testified, that in June 1835, he met the plaintiff in Quincy, on his way to see Curtis, who lived in Scituate ; that the plaintiff told him, that his object was to get up his contract which he had given Curtis, and then get back the timber which was attached ; that the witness told the plaintiff, that the timber was delivered, and that he could not do as he proposed ; and that the plaintiff replied, that if he could get back the paper or receipt held by Curtis, he could accomplish his purpose.

It further appeared, that after the attachment, the timber and plank was receipted for by Greenleaf, at the request of the plaintiff, and sold by the agreement of the parties ; and that the proceeds, amounting to the sum of $336·75, were paid over to the defendant, who applied them in part satisfaction of the execution subsequently issued in favor of Trowbridge.

Upon this evidence, the defendant contended, that the delivery as well as the sale of the timber by the plaintiff to

Riddle
v.
Varnum.

Curtis & Barstow, was understood and agreed by them, at the time, to be complete, and he desired that the case might go to the jury upon this point ; but as the plaintiff consented, that, if a verdict of the jury for the defendant could by law be sustained, judgment might be entered for the defendant, the case was taken from the jury and submitted to the Court.

If such verdict could be sustained, judgment was to be rendered for the defendant ; otherwise, for the plaintiff.

*June 13th.* *Sewall*, for the plaintiff. The property in the timber had not vested in Curtis & Barstow at the time of the attachment, because there had been no admeasurement of it. If it had been destroyed, it would have been impossible to have ascertained the amount of the purchase money, and the plaintiff must have borne the loss. The contract was executory. *Hanson* v. *Meyer*, 6 East, 614 ; *Rugg* v. *Minett*, 11 East, 210 ; Long on Sales, 153 *et seq.* ; *Shepley* v. *Davis*, 5 Taunt. 617; *Simmons* v. *Swift*, 8 Dowl. & Ryl. 693 ; *S. C.* 5 Barn. & Cressw. 857 ; Brown on Sales, 358 ; Dig. *lib.* 18, *tit.* 1, *c.* 35, §§ 5, 6, 7 ; *Outwater* v. *Dodge*, 7 Cowen, 85 ; *M'Donald* v. *Hewett*, 15 Johns. R. 349 ; *Rapelye y. Mackie*, 6 Cowen, 250 ; *Brewer* v. *Smith*, 3 Greenl. 45 ; *Ward* v. *Shaw*, 7 Wendell, 404 ; *Andrew* v. *Dieterich*, 14 Wendell, 31.

Where the delivery is conditional, the vendor has a right to reclaim, in case the condition is not performed. *Reed* v. *Upton*, 10 Pick. 522 ; *D'Wolf* v. *Babbett*, 4 Mason, 289 ; *Haggerty* v. *Palmer*, 6 Johns. Ch. R. 437 ; *Hussey* v. *Thornton*, 4 Mass. R. 405 ; *Whitwell* v. *Vincent*, 4 Pick. 449.

The right of stoppage *in transitu* existed in this case. Greenleaf was the agent of the plaintiff, and the timber continued in his possession. Curtis & Barstow had no right to take possession, till it was measured and the canallage paid ; and even then their insolvency would have entitled the plaintiff to retain the timber. Long on Sales, 186, 187 ; *Stubbs* v. *Lund*, 7 Mass. R. 453 ; *Naylor* v. *Dennie*, 8 Pick. 198.

*Bartlett*, for the defendant, to the point, that as between the parties to a sale, the property in the thing sold vests in the vendee before delivery, if the contract is complete, delivery

only being necessary in reference to third parties, cited Noy's Maxims, *c.* 42 ; to the point, that the property had vested in Curtis & Barstow, at the time of the attachment, as nothing remained to be done by the vendor, *Tarling* v. *Baxter*, 6 Barn. & Cressw. 364 ; and to the point, that even where something remains to be done by the vendor, the property in the thing sold vests in the vendee, if the contract shows that it was the intention of the parties that the property should pass, *Macomber* v. *Parker*, 13 Pick. 175 ; *Hinde* v. *Whitehouse*, 7 East, 558 ; *Andrew* v. *Dieterich*, 14 Wendell, 31.

DEWEY J. delivered the opinion of the Court. The question presented for adjudication is, whether upon the evidence detailed in the report of this case, it would have been competent for the jury to return a verdict in favor of the defendant. If such a verdict could by law be sustained, the parties agree, that judgment shall be entered for the defendant.    *June 25th*

The point in controversy is, as to the property in certain timber and plank attached by the deputy of the defendant as belonging to Curtis & Barstow. Was the property in these articles in the plaintiff, or in Curtis & Barstow, at the time of the attachment ?

It is admitted by the plaintiff, that a contract in reference to the sale of the articles had been made, between himself and Curtis & Barstow, but he denies that the sale was so far completed as to vest the property in Curtis & Barstow prior to the attachment.

The leading objection to the alleged transfer of the property, is founded upon the fact, that the timber and plank were contracted for at a certain price, by the thousand feet, and that at the time of the attachment, they had not been surveyed and the measure of them ascertained.

The general doctrine on this subject is, undoubtedly, that when some act remains to be done in relation to the articles which are the subject of the sale, as that of weighing or measuring, and there is no evidence tending to show an intention of the parties to make an absolute and complete sale, the performance of such act is a prerequisite to the consummation of the contract ; and until it is performed, the property does not pass to the vendee. But in the case of sales where the property

to be sold is in a state ready for delivery, and the payment of money, or giving security therefor, is not a condition prece-dent to the transfer, it may well be the understanding of the parties, that the sale is perfected, and the interest passes im-mediately to the vendee, although the weight or measure of the articles sold remains yet to be ascertained.   Such a case presents a question of the intention of the parties to the con-tract.    The party affirming the sale must satisfy the jury, that it was intended to be an absolute transfer, and all that remained to be done was merely for the purpose of ascertaining the price of the articles sold, at the rate agreed upon.

These views are fully sustained by the decision of this Court in the case of *Macomber* v. *Parker*, 13 Pick. 182. The objection was there taken in relation to a contract for the sale of a quantity of bricks, in which it was stipulated, that the bricks were to be counted ; and this not having been done before an attachment of the same, it was insisted, that the sale was not complete.   But it was held, that if it was the intent of the parties to the contract to complete the sale prior to the counting, then the property might well pass, al-though that operation might yet remain to be done, for the purpose of ascertaining the amount to be paid for the article sold.   See also *Hawes* v. *Watson*, 2 Barn. & Cressw. 540.

The Court are of the opinion, that upon a proper applica-tion of these principles to the present case, the jury would have been warranted from the testimony to find, that it was the intention of the parties here contracting to make the sale of the articles complete and absolute before the measure of them was ascertained.

There is evidence in the case, from which the jury might have inferred a delivery to Curtis & Barstow of the articles sold.    This will be found in the written memorandum which the plaintiff received from the vendees, and in the testimony of Josselyn as to a conversation between himself and the plaintiff.    In connexion with this may be considered the evi-dence of an actual payment of two hundred dollars on ac-count of the purchase, and the fact that payment for the resi-due was not a condition precedent to the delivery, inasmuch as, by the terms of the contract, a credit of ninety days was

given. If such a delivery were found by the jury, the sale might be considered as perfected, and the property would pass to the vendees, as is well settled.

It was further contended, that the plaintiff might avoid the sale and reclaim the goods, if the vendee became insolvent before payment was made for them. This right, we apprehend, exists only while the goods are in the possession of the vendor or of a carrier employed to convey the same to the vendee, and with the change of possession the lien of the vendor on the goods for the payment of the price of the same is wholly lost. If the jury would have been authorized to infer a delivery to the vendee, they might also have found against the lien of the plaintiff.

Upon the whole matter, the Court are of opinion, that the jury would have been authorized to return a verdict for the defendant; and agreeably to the stipulations of the parties, the plaintiff must become nonsuit.